UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUZANNE L. CIRENCIONE,

                        Plaintiff,                       DECISION AND ORDER

vs.

                                                           21-CV-6615 (CJS)

COUNTY OF ONTARIO and
MARY KRAUSE,

                        Defendants.

_____

       Plaintiff Suzanne L. Cirencione filed this action against Defendants County of Ontario and Mary Krause claiming retaliation for exercising her First Amendment free speech rights in violation of 42 U.S.C. § 1983, and three other causes of action under New York state law. Am. Compl., Nov. 8, 2021, ECF No. 7. The matter is presently before the Court on Defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted. Mot. to Dismiss, July 6, 2021, ECF No. 11. For the reasons stated below, Defendants' motion [ECF No. 11] is granted with respect to Plaintiff's § 1983 claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and remands the matter to New York Supreme Court, Ontario County. The Clerk of Court is directed to close this case.

LEGAL STANDARD

       At the outset, the Court notes that the purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the

allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted).

BACKGROUND

For the purpose of ruling on Defendants' motion to dismiss, the Court accepts all factual allegations in Plaintiff's complaint as true, and draws all reasonable inferences in Plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

Defendant Ontario County is a municipal corporation under New York law, and at all times relevant to the present complaint, Defendant Mary Krause was the Ontario County Supervisor. Am. Compl. at ¶ 2–4. From May 2014 to January 2020, Plaintiff was employed as the Program Administrator for Defendant Ontario County's "Special Traffic

2

Options Program for Driving While Intoxicated" (STOP DWI). Am. Compl. at ¶ 16, 78. A New York state appellate court has summarized the STOP DWI program as follows:

> In 1981, the [New York State] Legislature enacted Vehicle and Traffic Law article 43-A, later reenacted as present [N.Y.V.T.L.] § 1197 . . . to encourage localities to establish a county-wide . . . [STOP DWI program] aimed at reducing alcohol-related traffic injuries and deaths through coordinated efforts within the counties for better enforcement, prosecution and prevention of drunken driving . . . . The STOP–DWI legislation offered an incentive to counties to participate by providing that all fines, penalties and forfeitures imposed by the various courts of the county in intoxicant-related offense prosecutions would be diverted from State revenues to the county where the offense was committed and deposited in a special account to fund the local program . . . .

*Cnty. of Rensselaer v. Regan*, 173 A.D.2d 37, 38–39 (N.Y. Ct. App. 1991), *aff'd*, 607 N.E.2d 793 (1992).

N.Y.V.T.L. § 1197 requires each county that administers a STOP DWI program to assign a "coordinator" for that program, and lists several duties the coordinator must perform, including:

> . . . Render annually or at the request of the county legislature or other governing body of the county, a verified account of all moneys received and expended by the coordinator or under the coordinator's direction and an account of other pertinent matters.
>
> . . . Submit annually or upon request of the chief fiscal officer of each county participating in the program, in such manner as may be required by law, an estimate of the funds required to carry out the purposes of this section.
>
> * * *
>
> . . . Receive proposals from county, town, city or village agencies or non-governmental groups for activities related to alcohol traffic safety and to submit them to the county board of legislators or other such governing body, together with a recommendation for funding of the activity if deemed appropriate.

. . . Cooperate with and assist local officials within the county in the formulation and execution of alcohol traffic safety programs including enforcement, adjudication, rehabilitation and education.

N.Y.V.T.L. § 1197(4)–(5) (listing the functions of the program coordinator).

In January 2016, as part of her role as STOP DWI Program Administrator, Plaintiff proposed using County "Contingency Funds" to purchase a patrol car for use by the Ontario County Sheriff's Department exclusively for DWI patrol. Am. Compl. at ¶¶ 22, 25. Defendant Krause disagreed, and amended Plaintiff's proposal to indicate the DWI patrol car should be purchased using "STOP DWI Reserve Funds." Am. Compl. at ¶ 28. Plaintiff believed that funding the DWI patrol car with "STOP DWI Reserve Funds" ran contrary to N.Y.V.T.L. § 1197, and took steps to undo Defendant Krause's amendment, including notifying her department head, the County's District Attorney that the amendment violated the law. Am. Compl. at ¶ 31. Plaintiff summarizes what occurred thereafter:

> 7. . . . . In retaliation, [Defendant] Krause subjected Plaintiff to pervasive, extended and severe harassment and verbal abuse that spanned over a period of nearly four years and did not let up, even as Plaintiff's physical and mental health worsened as a result of the abuse. [Defendant] Krause repeatedly and publicly humiliated Plaintiff and constantly undermined her. If that were not enough, [Defendant] Krause used her supervisory position to constantly taunt Plaintiff about alleged budget concerns that would result in staff reductions or the loss of her employment and/or office. [Defendant] Krause's behavior had a severe impact on Plaintiff's health including, but not limited to (1) severe anxiety including an anxiety attack, (2) the rupturing of the ACL joint in her jaw, and (3) the exacerbation of breast cancer.
>
> 8. The County, and several of its employees in supervisory roles, were made aware of [Defendant] Krause's abusive behavior and did nothing to make it stop.
>
> 9. At all relevant times, Resolution No. 355-2011 adopted by the County June 3, 2011, and entitled "Ontario County Whistleblower and Non-Retaliation Policy" was in effect, which recognized the County's obligation pursuant to State and Federal laws and regulations to institute policies to

report suspected misconduct or violation of the law to designated County officials, and to investigate and take remedial action.

10. In addition, and pursuant to federal and state laws and regulations, the County was required to institute policies prohibiting retaliation against whistleblowers, to train employees about the policies and post the policies, monitor the policies, and take disciplinary action against any County employee or officer who commits or condones retaliation or otherwise violates the policies.

Am. Compl. at ¶ 7–10.

Based on Defendant Krause's alleged misconduct, and the County's failure to take action to stop that misconduct, Plaintiff filed an action in New York Supreme Court, Ontario County in August 2021. Am. Compl. at ¶ 14. The complaint lists four causes of action: (1) violation of New York State Civil Service Law § 75-b; (2) intentional infliction of emotional distress; (3) negligent hiring and retention; and (4) retaliation for exercising freedom of speech in violation of 42 U.S.C. § 1983. Am. Compl. at ¶ 89–126. Defendants removed the case to this Court in October 2021. Am. Compl. at ¶ 15.

## DISCUSSION

In the instant motion, Defendants identify several reasons that they believe warrant dismissal of this case. Def. Mem. of Law, Dec. 6, 2021, ECF No. 11-2. Of particular importance, Defendants argue that Plaintiff's retaliation claim under 42 U.S.C. § 1983 fails because she does not allege a policy, custom, or practice of the county, and because she fails to allege any adverse employment action or constitutionally protected speech. Because the Court agrees that Plaintiff fails to state a claim under § 1983, the Court need not resolve Defendants' arguments related to Plaintiff's state law claims. Rather, the matter is remanded to the state court for consideration of those issues.

Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

Defendants maintain that Plaintiff has failed to state a claim for retaliation for exercising her freedom of speech under 42 U.S.C. § 1983 because, among other reasons, she failed to allege that she engaged in constitutionally protected speech. Plaintiff responds that the speech for which she was penalized involved blowing the whistle on the misuse of public funds and refusing to proceed with illegal action, both of which are matters of public concern protected under the First Amendment. Pl. Mem. in Opp., 18, Jan. 3, 2022, ECF No. 13. The Court finds that even assuming that Plaintiff's speech was regarding a matter of public concern,[1] the speech was not constitutionally protected from retaliation because it was employee speech that was "part and parcel" of Plaintiff's official duties as a public employee of Defendant Ontario County.

*Specific Factual Allegations*

Plaintiff's claim under § 1983 for retaliation following the exercise of her First Amendment free speech rights is based largely on the following allegations:

> 22. In January 2016, in the ordinary course of her position and to better protect the County's residents, Plaintiff proposed the purchase of a patrol car that would be used solely for the purposes of DWI enforcement (the "DWI Patrol Car").
>
> * * *
>
> 25. As required by policy and law, on or about February 8, 2016, the purchase of a "Ontario County Sheriff's Office Marked Patrol Car" was placed on the Public Safety Committee Agenda, with a request for the authorization to transfer $16,000 from County "Contingency Funds" to the Ontario County Sheriff's [sic] Office for the purchase.

---

[1] "The Supreme Court has defined a 'matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" *Vail v. Town of Cayuta*, No. 20-CV-6917-FPG, 2021 WL 1788523, at *3 (W.D.N.Y. May 5, 2021) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

> \* \* \*
>
> 27. On February 9, 2016, Ms. Krause called the Plaintiff and advised that she did not support the purchase of the proposed DWI Patrol Car and that all future STOP program ideas would have to be approved by Ms. Krause prior to being discussed with other parties.
>
> 28. On February 10, 2016, Ms. Krause revised the Public Safety Committee Agenda, replacing the words "Contingency Funds" with "STOP-DWI Reserve Funds" for the purchase of the DWI Patrol Car.
>
> 29. Under New York law, the STOP DWI Reserve Funds could not be used to purchase the DWI Patrol Car . . . .
>
> 30. Plaintiff notified Ms. Krause that her proposal to use STOP DWI Reserve Funds violated New York Law. Ms. Krause refused to change her proposal and failed to correct her improper conduct in violation of New York law.
>
> 31. Plaintiff then reported Ms. Krause's improper actions and violations of law to her Department Head, District Attorney R. Michael Tantillo.
>
> 32. As a result of Plaintiff's reporting to Mr. Tantillo, Defendant County of Ontario rejected Krause's illegal proposal and instead, followed New York law by using contingency funds to purchase the DWI Patrol Car.
>
> 33. As part of her employment obligations, Plaintiff was required to report Ms. Krause's attempted misuse of public funds and her improper proposal in violation of New York law, but she suffered grave consequences as a result of the reporting.

Am. Compl. at ¶ 22–33.

Later in her Amended Complaint, Plaintiff elaborates upon the basis for her allegations that Defendant Krause's conduct regarding the DWI Patrol Car was in violation of the law. She states that Defendant Krause's attempt to alter the source of funds from County contingency funds to STOP DWI Reserve Funds is prohibited by N.Y.V.T.L. § 1197, which requires that the matter must be "brought before the [local Traffic Safety] Board and approved by the Governor's Traffic Safety Committee." Am. Compl. at ¶ 96.

7

*Legal Principles*

The Second Circuit has summarized the legal principles relating to Plaintiff's claim of "Retaliation for Exercising Freedom of Speech [in] Violation of 42 U.S.C. § 1983," as follows:

> Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) "whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." [*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)] (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County*, 391 U.S. 563, 568 (1968)) . . . . The majority opinion in *Garcetti* focused on the first inquiry, and specifically its operation as a limiting principle when the government is acting as an employer, exercising control over employee speech in the interest of the "efficient provision of public services." . . . . Recognizing that government employers (like private employers) "have heightened interests in controlling speech made by an employee in his or her professional capacity," the Supreme Court ruled that a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes . . . and employer retaliation for such speech does not justify the "displacement of managerial discretion by judicial supervision," [*Garcetti*, 547 U.S. at 423].

*Ruotolo v. City of New York*, 514 F.3d 184, 188–89 (2d Cir. 2008) (some internal citations omitted).

"[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties . . . ." *Lane v. Franks*, 573 U.S. 228, 240 (2015). The objective inquiry into whether a public employee spoke "pursuant to" his or her official duties is "a practical one." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010). The Second Circuit has counseled that courts should

consider such factors as whether the speech at issue: is "part and parcel" of a public employee's ability to execute her official duties (*Montero v. City of Yonkers, New York*, 890 F.3d 386, 395–96 (2d Cir. 2018)) (a public school teacher complaining about student discipline); is a "form or channel of discourse available to non-employee citizens" (*Montero*, 890 F.3d at 396) (utilizing an internal grievance procedure); and owes its existence to the employee's job duties (*Ross v. Breslin*, 693 F.3d 300, 308 (2d Cir.2012)) (finding speech was not protected from employer retaliation where plaintiff was a payroll clerk tasked with reporting pay irregularities).

*Application*

In the present case, Plaintiff states that she was the "Program Administrator" for Ontario County's STOP DWI program. Am. Compl. at ¶ 16. The specifics of Plaintiff's complaint suggest that Ontario County's STOP DWI "Program Administrator" is the "coordinator" mandated by statute in N.Y.V.T.L. § 1197. For instance, one of the duties of the program coordinator under the law is to "[r]eceive proposals . . . for activities related to alcohol traffic safety and submit them to the county board of legislators . . ., together with a recommendation for funding of the activity . . . ." § 1197(5)(b). That is precisely what Plaintiff did when, "[i]n January 2016, in the ordinary course of her position and to better protect the County's residents, Plaintiff proposed the purchase of a patrol car that would be used solely for the purposes of DWI enforcement . . ." and placed the purchase of the DWI Patrol Car on the Public Safety Committee Agenda," with a request for the authorization to transfer $16,000 from County 'Contingency Funds' to the Ontario County Sheriff's Office for the purchase." Am. Compl. at ¶¶ 22, 25. Certainly, then, the

recommendation of the purchase of the DWI Patrol Car – and of the source of the funds to pay for that purchase – was "part and parcel" of Plaintiff's official duties.

Further, because they arose as a result of Plaintiff's performance of her official duties, Plaintiff's dispute with Defendant Krause regarding the source of the funds to pay for the purchase (Am. Compl. at ¶ 30), and Plaintiff's subsequent communications with her Department Head, Mr. Tantillo, (Am. Compl. at ¶ 28, 31), were also part of her official duties. *Healy v. City of New York Dept. of Sanitation*, 286 Fed. App'x 744, 746 (2d Cir. 2008) (finding an employee's report of corruption to a superior was within the scope of his official duties where the report was based directly on the results of an inventory check he performed as part of his official duties).

According to Plaintiff's account, in the days before the Public Safety Committee meeting at which Plaintiff's proposal for a DWI Patrol car was to be discussed, Defendant Krause voiced a difference of opinion as to how the car should be funded and altered the Committee agenda to reflect as much. Am. Compl. at ¶ 28. Based on her knowledge of the statutory and regulatory requirements of the STOP DWI program, Plaintiff first objected to Krause's funding ideas directly, and then elevated her objections to Tantillo when Krause refused to alter the Committee agenda. Am. Compl. at ¶ 30–31. In other words, Plaintiff's communications to her Department Head in this instance were the result of an internal budget dispute caused by a proposal Plaintiff made in the course of fulfilling one of her primary responsibilities. Thus, Plaintiff's communication with Tantillo regarding Defendant Krause's attempts to fund the patrol car with STOP DWI program funds were also made within the scope of her duties. *See, e.g., Weintraub*, 593 F.3d at 203 (a

teacher's union grievance regarding his school's decision not to discipline one of his students was unprotected speech because the grievance "was a means to fulfill and undertaken in the course of performing his primary responsibility of teaching").

In addition, although a "civilian analogue" to Plaintiff's communications does exist, insofar as communicating with the County's District Attorney about possible wrongdoing is unquestionably "a path available to ordinary citizens," Plaintiff's allegations regarding her communications with Tantillo "establish no more than that [she] reported what [she] believed to be misconduct . . . up the chain of command." *Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011). Plaintiff only knew of this perceived misconduct by virtue of her official role as the STOP DWI Program Administrator, and her communication was internal to her department rather than external. *Id.* (quoting *Garcetti*, 547 U.S. at 421 ("speech that owes its existence to a public employee's professional responsibilities" is made "pursuant to" that employee's "official duties")); *see also Healy*, 286 Fed. App'x at 746. Lastly, as Plaintiff herself admits in her complaint, she was required to report Defendant Krause's improper proposal "[a]s part of her employment obligations . . . ." Am. Compl. at ¶ 33. *See also D'Olimpio v. Crisafi*, 462 F. App'x 79, 80 (2d Cir. 2012) (finding a New York State employee's complaints to the state's Inspector General were part of his employment duties where New York Executive Law § 55(1) required state employees to report misdeeds to the inspector general or face possible termination of employment).

Accordingly, the Court finds that Plaintiff's speech occurred in the course of her employment duties, and is therefore not constitutionally protected from retaliation.

<u>The matter is remanded to the state court to address the state law claims</u>.

Defendants argue that even if the Court dismisses the federal § 1983 claim over which it has subject matter jurisdiction, it should nevertheless retain supplemental jurisdiction over the remaining state law claims because the motion to dismiss does not involve any novel or complex state law issues. Plaintiff, on the other hand, maintains that the matter should be remanded to state court because there has not yet been any discovery, the state law claims implicate the state's interest in administering its programs and government, and New York state courts have taken a different approach to tolling the statute of limitations due to the COVID pandemic than have federal courts. The Court agrees with Plaintiff.

*Legal Principles*

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction," and the court determines that retaining jurisdiction would not promote the values of economy, convenience, fairness, and comity. *See* 28 U.S.C. § 1367(c); *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (discussing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . judicial economy,

convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 302 (2d Cir. 2003). A district court that declines to exercise supplemental jurisdiction has the discretion to dismiss the case entirely, or to remand the case to the state court for further proceedings. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

*Application*

Three state-law claims remain in this action: violation of New York Civil Service Law § 75-b, intentional infliction of emotional distress, and negligent hiring and retention. While Defendants view their arguments as calling for a straightforward application of settled principles, after a careful review of the papers the Court concludes that "as a matter of comity and to promote justice," the matter should be remanded to the state trial court so that the parties may obtain "a surer-footed reading of applicable [state] law." *New York v. Niagara Mohawk Power Corp.*, 263 F. Supp.2d 650, 670 (W.D.N.Y. 2003) (quoting *Gibbs*, 388 U.S. at 726). For example, one of Plaintiff's claims involves a direct interpretation and application of state Civil Service Law § 75-b, and one of her arguments in opposition to the motion to dismiss involves a tolling argument that she demonstrates to have been treated differently at the federal and state level. Moreover, Defendants maintain that another of Plaintiff's state law claims is precluded by state worker's compensation law.

Accordingly, the Court declines to exercise supplemental jurisdiction, and the remaining state-law claims must be remanded to the New York Supreme Court, Ontario County for resolution.

CONCLUSION

For the foregoing reasons, it is hereby,

ORDERED that Defendants' motion to dismiss [ECF No. 11] is granted with respect to Plaintiff's claim of a violation of her constitutional rights under 42 U.S.C. § 1983; and it is further

ORDERED that the remaining claims of violation of New York Civil Service Law § 75-b, intentional infliction of emotional distress, and negligent hiring and retention be remanded to New York Supreme Court, Ontario County.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:   June 8, 2022
         Rochester, New York

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge